# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

--------------------------------------------------------------X

NEUROLOGICAL SURGERY PRACTICE OF LONG ISLAND, PLLC,

Plaintiff,

- against -

UNITEDHEALTHCARE INSURANCE COMPANY OF NEW YORK, INC.; OXFORD HEALTH PLANS (NY), INC.; UNITEDHEALTHCARE INSURANCE COMPANY; AND UNITED MEDICAL RESOURCES, INC.,

Defendants.

--------------------------------------------------------------X

Index No: 613528/2024

**PROPOSED AMENDED COMPLAINT**

Plaintiff, Neurological Surgery Practice of Long Island, PLLC ("Neurological"), by its attorneys, Harris Beach Murtha Cullina PLLC, for its Amended Complaint against the Defendant, UnitedHealthcare Insurance Company of New York, Inc.; Oxford Health Plans (NY), Inc.; UnitedHealthcare Insurance Company; and United Medical Resources, Inc. ("United"), alleges as follows:

## PRELIMINARY STATEMENT

1. By this lawsuit, By this lawsuit, Neurological, a Long Island-based neurological surgery practice seeks to recover over $697,000 for covered and medical necessary surgical services that Neurosurgical clinicians provided to 9 United enrollees on various dates of service in 2023 and 2024.

2. There can be no dispute that Neurological is entitled to this reimbursement. Each of the 20 claims at issue were the subject of independent dispute resolution (IDR) proceedings under the provisions of the No Surprises Act. In all these proceedings, certified IDR entities issued written determinations that Neurological was entitled to and awarded Neurological additional

reimbursement. All totaled, this additional reimbursement was more than $697,000.

3. Under the No Surprises Act, United had to pay this additional reimbursement no later than 30 days after the IDR determination date. While the Act gives a losing party limited grounds to challenge an IDR determination, at no point since the subject determinations were issued has United ever raised any of these grounds to challenge any of these terminations. Given that the 30-day deadlines that United had to pay this additional reimbursement have long passed, Neurological has an undisputed legal right and title to this additional reimbursement.

4. Accordingly, Neurological brings this lawsuit, sounding in conversion and money had and received, seeking to recover not only the additional reimbursement, but interest and all damages it has sustained by reason of United's wrongful exercise of dominion and control over these funds.

**PARTIES**

5. Plaintiff, Neurological Surgery Practice of Long Island, PLLC, is a New York professional service limited liability corporation with its principal place of business located at 100 Merrick Road, Suite 128W, Rockville Centre, New York.

6. Neurological Surgery Practice of Long Island, PLLC was formed in August 2020, and, because of a merger in December 2020, is the corporate successor of Neurological Surgery, P.C.

7. Upon information and belief, Defendant UnitedHealthcare Insurance Company of New York, Inc. is a New York-domiciled for-profit health and accident insurance company with a principal place of business located at One Penn Plaza, 8th Floor, New York, New York 10119.

8. Upon information and belief, Defendant Oxford Health Plans (NY), Inc. is a New York-domiciled for profit health maintenance organization with a principal place of business at 48 Monroe Turnpike, Trumbull, Connecticut 06611.

9. Upon information and belief, Defendant United Healthcare Insurance Company is a Connecticut insurance company with a principal place of business located at 185 Asylum Street, Hartford, Connecticut 06103.

10. Upon information and belief, Defendant United Medical Resources, Inc. is a third-party administrator of self-funded health plans with its principal place of business located at 115 W Wausau Avenue, Wausau, Wisconsin 54401.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Neurological

11. Plaintiff, Neurological Surgery Practice of Long Island, PLLC ("Neurological"), is one of the largest private neurosurgery practices on Long Island and in the New York metropolitan area.

12. Neurological's award-winning specialists are among the best neurosurgeons in New York City and on Long Island and serve as chiefs of neurosurgery in the most prestigious hospitals on Long Island.

13. Historically, Neurological, like other independent medical specialty groups, has not become a participating provider in health plan networks. Notwithstanding this, Neurological regularly provides medically necessary, covered services on an "out of network" and often emergency basis to enrollees of all health plans, including United's health plans.

14. Neurological's provision of these services since January 1, 2022, in many cases has been governed by the provisions of the No Surprises Act, Public Law No. 116-260.

**The No Surprises Act**

15. In December 2020, the United States Congress enacted the No Surprises Act, which was signed into law as part of the Consolidated Appropriations Act of 2021 (Public Law 116-260; Division BB § 109) on December 27, 2020. It took effect on January 1, 2022.

16. No Surprises Act § 103 amends 42 U.S.C. §§ 300gg et seq. to establish an IDR process for non-emergency services performed by non-participating physicians at in-network hospitals, hospital outpatient departments, critical access hospitals, and ambulatory surgical centers and out-of-network emergency services in the emergency department of a hospital or independent freestanding emergency department.

17. The No Surprises Act provides that the federal IDR process will apply and may be used by physicians and health plans to determine the out-of-network rate for emergency services in the emergency department of a hospital or independent freestanding emergency department and non-emergency items and services furnished by non-participating providers during a visit to a participating health care facility when a "specified state law" does not apply (42 U.S.C. § 300gg-111).

18. Since the No Surprises Act became effective on January 1, 2022, Neurological's reimbursement for many of these services has been governed by the provisions of the Act.

19. The No Surprises Act prohibits out-of-network providers, such as Neurological, from balance billing or otherwise pursuing payments from health plan enrollees. *See* 42 U.S.C. §§ 300gg- 131 (a) (emergency services), 300gg-132 (non-emergency services performed by nonparticipating providers at participating facilities).

20. In accordance with the No Surprises Act, when Neurological has disagreed with the initial reimbursement made by the Plan for medically necessary, covered services, Neurological has

pursued its right to have this disagreement adjudicated by the Act's independent dispute resolution process, established by 42 U.S.C. § 300gg-111(c)(2).

21. Neurological has at all times complied with and participated in this IDR process in good faith, timely providing the offer and submissions required by 42 U.S.C. § 300gg-111(c)(5)(B).

22. This section provides, in relevant part:

> Submission of offers. Not later than 10 days after the date of selection of the certified IDR entity with respect to a determination for a qualified IDR item or service, the provider or facility and the group health plan or health insurance issuer offering group or individual health insurance coverage party to such determination—(i) shall each submit to the certified IDR entity with respect to such determination—(I) an offer for a payment amount for such item or service furnished by such provider or facility; and (II) such information as requested by the certified IDR entity relating to such offer; and (ii) may each submit to the certified IDR entity with respect to such determination any information relating to such offer submitted by either party, including information relating to any circumstance described in subparagraph (C)(ii).

23. In many cases, the IDR entity, after reviewing the parties' offers and submissions, has selected Neurological's reimbursement offer in accordance with 42 U.S.C. § 300gg-111(c)(5)(A).

24. This section provides, in relevant part:

> In general. Not later than 30 days after the date of selection of the certified IDR entity with respect to a determination for a qualified IDR item or service, the certified IDR entity shall—(i) taking into account the considerations specified in subparagraph (C), select one of the offers submitted under subparagraph (B) to be the amount of payment for such item or service determined under this subsection for purposes of subsection (a)(1) or (b)(1), as applicable; and(ii) notify the provider or facility and the group health plan or health insurance issuer offering group or individual health insurance coverage party to such determination of the offer selected under clause (i).

25. Under the No Surprises Act, when the IDR entity has selected Neurological's offer, the health plan has 30 days from the date on which the determination is made to pay the additional reimbursement due Neurological.

26. Specifically, 42 U.S.C. § 300gg-111(c)(6) provides:

> The total plan or coverage payment required pursuant to subsection (a)(1) or (b)(1), with respect to a qualified IDR item or service for which a determination is made under paragraph (5)(A) or with respect to an item or service for which a payment amount is determined under open negotiations under paragraph (1), shall be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made.

27. The spreadsheet annexed as Exhibit A and incorporated into this Complaint by reference sets forth claims involving medical services provided by Neurological to enrollees of United's plans for which (a) an IDR proceeding was commenced; (b) the duly appointed IDR entity, after reviewing the parties' offers and submissions, selected Neurological's offer, resulting in an additional reimbursement due from United's plans to Neurological; (c) more than 30 days have elapsed since the IDR entity made these determinations; yet (d) United has failed to pay these additional reimbursement amounts as required by 42 U.S.C. § 300gg-111(c)(6).

28. Additionally, United's plans have persisted in failing to pay these additional, statutorily ordered reimbursement amounts notwithstanding numerous attempts by Neurological to have these plans honor their obligation.

29. The United plans have no legitimate defense to their persistent refusal to pay these additional reimbursement amounts.

30. Indeed, the No Surprises Act specifically provides that a "determination of a certified IDR entity under subparagraph (A)—(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity

involved regarding such claim; and (II) shall not be subject to judicial review, except in a case

described in any of paragraphs (1) through (4) of section 10(a) of title 9, United States Code" 42 U.S.C. § 300gg-111(c)(5)(E)(i).

31. The grounds set forth in 9 U.S.C. § 9(a)(1-4) are: "(1)where the award was procured by corruption, fraud, or undue means; (2)where there was evident partiality or corruption in the arbitrators, or either of them; (3)where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4)where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

32. In the time that has elapsed since these IDR determinations were made, United's plans have failed to come forward with any objection regarding fraud, misconduct, partiality or corruption, or any IDR entity exceeding its powers.

33. The persistent refusal by United's plans to honor its obligations to pay the additional reimbursement has caused Neurological substantial and grievous injury.

**FIRST CAUSE OF ACTION**

34. Neurological repeats and realleges the allegations set forth above as if more fully set forth herein.

35. By reason of all the foregoing, Neurological, by operation of law, had a legal possessory right or interest in the additional reimbursement awarded Neurological in connection with each of the IDR determinations set forth on Exhibit A upon the 31st day after the IDR determination was issued.

36. By reason of all the foregoing, the additional reimbursement awarded Neurological on each of the IDR determinations set forth on Exhibit A separately constituted a specifically identifiable fund relating to each separate IDR determination.

37. From the 31st day after each of the IDR determinations set forth on Exhibit A was issued through today, United has exercised dominion over the separately identifiable fund of additional reimbursement to the exclusion of Neurological's possessory right or interest.

38. From the 31st day after each of the IDR determinations set forth on Exhibit A was issued through today, United has interfered with this separately identifiable fund of additional reimbursement to the derogation of Neurological's possessory right or interest.

39. By reason of all the foregoing, Neurological was damaged in amount to be determined at trial.

40. Neurological's compensatory damages include the value of each of the separately identifiable funds for additional reimbursement. The total combined value of these funds is currently no less than $697,043.62.

41. Neurological's compensatory damages include interest on the value of each of the separately identifiable funds of additional reimbursement, calculated at the statutory rate running from the date that United first exercised dominion over each separately identifiable fund of additional reimbursement to the exclusion of Neurological's possessory right or interest, and ending on the date that United turns over these to Neurological.

42. Neurological's compensatory damages also includes the costs it incurred in attempting to obtain possession of the funds converted by United.

**SECOND CAUSE OF ACTION**

43. Neurological repeats and realleges the allegations set forth above as if more fully set forth herein.

44. There is no enforceable contract at law between the parties governing the subject matter of this action.

45. Starting on the 31st day after each of the IDR determinations set forth on Exhibit A was issued, United received and has retained the additional reimbursement awarded Neurological by the IDR determinations.

46. As of the 31st day after each of the IDR determinations set forth on Exhibit A was issued, the additional reimbursement awarded Neurological by the IDR determinations belonged to Neurological by operation of law.

Starting on the 31st day after each of the IDR determinations set forth on Exhibit A was issued, United benefitted from the receipt and retention of this money, by, among other things, generating interest in this money and otherwise having use of this money for investment or payment of expenses.

47. By reason of all the foregoing, under principles of equity and good conscience, United should not be permitted to keep this money.

48. By reason of all the foregoing, Neurological has been damaged in an amount to be determined trial, but in any event no less than $697,043.62, together with statutory interest, and the costs and disbursements of this action.

**THIRD CAUSE OF ACTION**

49. Neurological repeats and realleges the allegations set forth above as if more fully set forth herein.

50. The spreadsheet annexed as Exhibit A, and incorporated into this Amended Complaint by reference, sets forth claims involving medical services provided by Neurological to enrollees of United's plan for which an IDR proceeding under the No Surprises Act was commenced; and the duly appointed IDR entity, after reviewing the parties' offers and submissions, selected Neurological's offer, resulting in an additional reimbursement due from United's plans to Neurological.

51. In each of the claims listed in Exhibit A, United failed and refused to pay these additional reimbursement amounts awarded Neurological in the IDR proceedings within 30 days as required by 42 U.S.C. § 300gg-111(c)(6).

52. These additional reimbursement amounts awarded Neurological remain unpaid.

53. The No Surprises Act specifically provides that IDR determinations awarding additional reimbursement are binding on the parties involved, unless there is a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity. 42 U.S.C. § 300gg-111(c)(5)(E)(i).

54. To date, United has failed to come forward with any evidence that the claims at issue were fraudulent or based on a misrepresentation of facts.

55. Further, United has failed to come forward with any argument or evidence that the award was procured by corruption, fraud, or undue means; there was evident partiality or corruption in the IDR entity, or either of them; the IDR entity was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or the IDR entity exceeded its powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *See* 9 U.S.C. § 9(a).

56. By reason of all the foregoing, United has violated the No Surprises Act, 42 U.S.C. § 300gg-111(c)(6), and is entitled to compensatory damages in the amount of additional reimbursement awarded in the IDR determinations at issue.

57. Neurological is further entitled to pre-judgment interest from the 31st day after each award was entered until the date judgment is entered and post-judgment interest thereafter until the judgment is satisfied.

58. Finally, pursuant to 29 U.S.C. § 1132(g), Neurological seeks an award of reasonable attorney's fees and costs incurred in bringing this action.

**FOURTH CAUSE OF ACTION**

59. Neurological repeats and re-alleges the allegations set forth above as if more fully set forth herein.

60. Neurological has been assigned the right to payment and benefits from the beneficiaries of Defendants' plans. Accordingly, Neurological steps into the shoes of, and are now considered, ERISA beneficiaries pursuant to 29 U.S.C. § 1002(8) for the self-funded plans that Defendants are administering.

61. As an assigned beneficiary, Neurological is entitled to plan benefits and has standing to bring claims under ERISA. Defendants are responsible for No Surprises Act compliance for the plans they administer. Thus, Neurological is entitled to recover payment of benefits of the plans from Defendants per the IDR determinations.

62. Defendants improperly denied benefits by failing to pay the IDR awards within thirty (30) days of each decision as required by federal law. Defendants' actions were in derogation of Neurological's rights pursuant to federal law.

63. Defendants' actions also constituted an abuse of discretion by: (a) not properly interpreting plan terms that are not ambiguous; (b) exercising discretion over non-discretionary plan terms; and (c) denying Plaintiffs payment and benefits under the plan terms.

64. Defendants' denial of payment and benefits upon the finality of IDR determinations was not substantially justified decisions, was arbitrary and capricious, was unsupported by substantial evidence, constituted abuse of any discretion allowed, and was wrongful under all the circumstances.

65. By reason of all the foregoing, Neurological, as assignee, hereby asserts a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1332(a)(1)(B) to recover payment of the IDR awards from the self-funded plans administered by Defendants at issue herein.

66. Pursuant to 29 U.S.C. § 1132(g), Neurological further seeks an award of reasonable attorney's fees and costs incurred in bringing this action.

**WHEREFORE**, Plaintiff, Neurological Surgery Practice of Long Island, PLLC, demands judgment against the Defendants, UnitedHealthcare Insurance Company of New York, Inc.; Oxford Health Plans (NY), Inc.; UnitedHealthcare Insurance Company; and United Medical Resources, Inc., as follows:

a. On the first cause of action, awarding Plaintiff compensatory damages in an amount to be determined at trial including, but not limited to, the combined value of each of the separately identifiable funds for additional reimbursement (which is currently no less than $697,043.62);

b. On the first cause of action, awarding Plaintiff interest on the value of each of the separately identifiable funds of additional reimbursement, calculated at the statutory rate running from the date that United first exercised dominion over

each separately identifiable fund of additional reimbursement to the exclusion of Plaintiff's possessory right or interest, and ending on the date that Defendants turn over these to Plaintiff.

c. On the first cause of action. awarding Plaintiff the costs it incurred in attempting to obtain possession of the funds converted by Defendants.

d. On the second cause of action, awarding Plaintiff compensatory damages in an amount to be determined trial, but in any event no less than $697,043.62, together with statutory interest.

e. On the third cause of action, awarding the Plaintiff compensatory damages in the amount of additional reimbursement to which it is entitled under the IDR determinations at issue, along with pre- and post- judgment interest per 28 U.S.C. § 1961.

f. On the fourth cause of action, awarding Plaintiff its costs of suit herein and rea-sonable attorney's fees pursuant to ERISA Section 502(g)(1), 29 U.S.C. § 1132(g).

g. Awarding Plaintiff its attorney's fees, costs, pre- and post-judgment interest.

h. Awarding Plaintiff the costs, disbursements, and other allowances of this action.

[redacted]rding Plaintiff such other and further relief that the Court

de[redacted]

Dated: Un[redacted]rk
Jul[redacted]

Respectfully submitted,
HARRIS BEACH MURTHA CULLINA PLLC

By: /s/ Roy W. Breitenbach
Roy W. Breitenbach
Maya I. Ureño-Dembar
333 Earle Ovington Blvd, Suite 901
Uniondale, New York 11553
Phone: 516.880.8484
Fax: 516.880.8483
*Attorneys for Plaintiff, Neurological Surgery Practice of Long Island, PLLC*

TO: UNITEDHEALTHCARE INSURANCE COMPANY OF NEW YORK, INC.
One Penn Plaza, 8th Floor
New York, New York 10119
OXFORD HEALTH PLANS (NY), INC.
48 Monroe Turnpike
Trumbull, Connecticut 06611

UNITEDHEALTHCARE INSURANCE COMPANY
185 Asylum Street
Hartford, Connecticut 06103

UNITED MEDICAL RESOURCES, INC.
115 W Wausau Avenue
Wausau, Wisconsin 54401

# Exhibit A

| DISP | NAME | | CARRIER | DATE OF DETERMINATION | PROVIDER | AMOUNT |
|---|---|---|---|---|---|---|
| DISP-474761 | Lucy Ramirez | LR | OXFORD | 10/18/2023 | M. BRISMAN | $ 85,963.00 |
| DISP-1180760 | Doreen Dejong | DD | UHC | 5/23/2024 | BOLOGNESE | $ 24,524.28 |
| DISP-1180742 | Doreen Dejong | DD | UHC | 5/24/2024 | BOLOGNESE | $ 36,171.25 |
| DISP-866348 | Lauren Howard | LH | UHC | 5/9/2024 | GAUDIN | $ 99,170.48 |
| DISP-866278 | Lauren Howard | LH | UHC | 5/16/2024 | GAUDIN | $ 49,585.24 |
| DISP-547838 | Lily Wend | LW | UHC | 11/5/2023 | BOLOGNESE | $ 34,303.14 |
| DISP-547772 | Lily Wend | LW | UHC | 11/5/2023 | BOLOGNESE | $ 41,951.62 |
| DISP-891033 | Robert Carmosino | RC | UHC | 5/9/2024 | RAK | $ 82,346.41 |
| DISP-705325 | Lily Wend | LW | UHSS | 1/2/2024 | PAPADIMAS | $ 19,736.76 |
| DISP-705402 | Lily Wend | LW | UHSS | 1/2/2024 | PAPADIMAS | $ 1,425.47 |
| DISP-705562 | Lily Wend | LW | UHSS | 1/8/2024 | PAPADIMAS | $ 11,436.49 |
| DISP-705795 | Lily Wend | LW | UHSS | 1/9/2024 | PAPADIMAS | $ 5,050.75 |
| DISP-705676 | Lily Wend | LW | UHSS | 1/9/2024 | PAPADIMAS | $ 6,888.06 |
| DISP-414591 | Lily Wend | LW | UHSS | 1/15/2024 | BOLOGNESE | $ 36,163.20 |
| DISP-414600 | Lily Wend | LW | UHSS | 1/15/2024 | BOLOGNESE | $ 24,825.01 |
| DISP-654022 | Aldo Leonardis | AL | UMR | 3/29/2024 | RAK | $ 40,388.84 |
| DISP-168052 | Erika Blumberg | EB | UMR | 4/4/2024 | BROWN | $ 44,473.62 |
| DISP-278632 | LISA TERRY | LT | UMR | 4/24/2023 | SONSTEIN | $ 31,050.00 |
| DISP-278723 | LISA TERRY | LT | UMR | 4/25/2023 | SONSTEIN | $ 18,515.00 |
| DISP-304759 | Stacie Otto | SO | UMR | 4/8/2024 | SPELLMAN | $ 3,075.00 |
| | | | | | | $ 697,043.62 |